**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS,**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| SANDISK TECHNOLOGIES, INC. AND SANDISK STORAGE MALAYSIA SDN. BHD. | § | |
| Plaintiff | § | Civil Action No.: 7:26-cv-00019-DC-DTG |
| v. | § | Jury Trial Demanded |
| VIASAT, INC., and GIGCASTERS, LLC | | |
| Defendant | | |

**DEFENDANT VIASAT, INC.'S RENEWED MOTION TO DISMISS FOR CLAIM AND ISSUE PRECLUSION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The Accused Product: IPTV ..... 3

B. Procedural History ..... 4

III. LEGAL STANDARD ..... 5

IV. ISSUE PRECLUSION REQUIRES DISMISSAL ..... 6

A. ISSUE PRECLUSION BARS PLAINTIFFS' CONSTRUCTION AND INFRINGEMENT CLAIMS FOR THE '400 AND '667 PATENTS ..... 7

1. Sandisk Cannot Re-Litigate the "Authenticate" Limitation of the '400 Patent ..... 7

2. Sandisk Cannot Re-Litigate the "Secure Region" Limitation of the '667 Patent ..... 11

B. ISSUE PRECLUSION BARS PLAINTIFFS' CONSTRUCTION AND INFRINGEMENT CLAIMS FOR THE '330 AND '854 PATENTS ..... 13

V. CLAIM PRECLUSION REQUIRES DISMISSAL ..... 15

A. CLAIM PRECLUSION BARS PLAINTIFFS' INFRINGEMENT CLAIMS FOR THE '667 AND '400 PATENTS ..... 16

B. CLAIM PRECLUSION BARS PLAINTIFFS' INFRINGEMENT CLAIMS FOR THE '854 AND '330 PATENTS ..... 18

VI. THE *KESSLER* DOCTRINE WARRANTS DISMISSAL ..... 19

VII. CONCLUSION ..... 20

CERTIFICATE OF SERVICE ..... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adaptix, Inc. v. AT&T Mobility LLC*,
No. 6:12-CV-120, 2015 WL 12696204 (E.D. Tex. May 12, 2015) .......... 18, 20

*Andres Holding Corp. v. Villaje Del Rio, Ltd.*,
No. SA-09-CV-127-XR, 2010 WL 4117020 (W.D. Tex. Oct. 19, 2010) .......... 16

*Askan v. FARO Techs., Inc.*,
No. 2022-2117, 2023 WL 4101351 (Fed. Cir. June 21, 2023) .......... 19

*Berry Sterling Corp. v. Pescor Plastics, Inc.*,
122 F.3d 1452 (Fed. Cir. 1997) .......... 13

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014) .......... 6, 19, 20

*Clay v. United States*,
537 U.S. 522 (2003) .......... 16

*Comer v. Murphy Oil USA, Inc.*,
718 F.3d 460 (5th Cir. 2013) .......... 16

*Corning Inc. v. Wilson Wolf Manuf. Corp.*,
569 F. Supp. 3d 920 (D. Minn. 2021) .......... 20

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
70 F. Supp. 3d 808 (E.D. Tex. 2014) .......... 7

*Duffie v. United States*,
600 F.3d 362 (5th Cir. 2010) .......... 5, 15

*Golden v. United States*,
No. 2024-2256, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025) .......... 19

*K-fee Sys. GmbH v. Nespresso USA, Inc.*,
89 F.4th 915 (Fed. Cir. 2023) .......... 13

*Kessler v. Eldred*,
206 U.S. 285 (1907) .......... 19

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955) .......... 5

*Medliant Inc. v. Mabute*,
No. 1:23-CV-419, 2024 WL 1913123 (E.D. Tex. May 1, 2024) ....7

*Mirror Worlds Techs., LLC v. Apple, Inc.*,
No. 6:13-CV-419, 2015 WL 11504514 (E.D. Tex. Dec. 3, 2015) ....5, 6

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
884 F.3d 1350 (Fed. Cir. 2018) ....6, 14

*Nystrom v. Trex Co.*,
580 F.3d 1281 (Fed. Cir. 2009) ....18

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ....13, 14, 15

*Pace v. Bogalusa City Sch. Bd.*,
403 F.3d 272 (5th Cir. 2005) ....5

*Papst Licensing GMBH & Co. KG v. Samsung Elecs.*,
924 F.3d 1243 (Fed. Cir. 2019) ....14

*Phil-Insul Corp. v. Airlite Plastics Co.*,
854 F.3d 1344 (Fed. Cir. 2017) ....6, 11, 13, 15

*Prager v. El Paso Nat'l Bank*,
417 F.2d 1111 (5th Cir. 1969) ....7

*SanDisk Techs., Inc. v. Viasat, Inc.*,
22-CV-04376 (N.D. Cal.) ....*passim*

*SanDisk Techs., Inc. v. Viasat, Inc.*,
26-01205 (Fed. Cir.) ....1

*Senju Pharm. Co. v. Apotex Inc.*,
746 F.3d 1344 (Fed. Cir. 2014) ....6, 16, 17

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015) ....5

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
791 F.3d 1317 (Fed. Cir. 2015) ....20

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ....5

*TCA Bldg. Co. v. Nw. Res. Co.*,
861 F. Supp. 1366 (S.D. Tex. 1994) ....7

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*,
112 F.4th 1364 (Fed. Cir. 2024) ........................................ 9, 12, 21

*Xiaohua Huang v. Huawei Technologies Co., Ltd.*,
787 Fed. App'x 723 (Fed. Cir. 2019) ........................................ 18

**Statutes**

35 U.S.C. § 101 ........................................ 4

## I. INTRODUCTION

Sandisk is trying to relitigate the very same case it already lost. After claim construction proceedings and extensive motion practice, the Northern District of California court granted summary judgment of noninfringement, finding that Viasat's "Video Content Delivery System" or "VCDS" does not infringe the '400 and '667 patents.[1] This cleared Viasat's "In-Flight Entertainment" or "IFE" product of infringement, because IFE utilizes the VCDS architecture to deliver content—like movies—to the aircraft. Unfortunately for Sandisk, the NDCA ruling also effectively cleared of infringement the sole accused product in this case, Viasat's "Internet Protocol Television" or "IPTV" product. That is because it is undisputed that IPTV content is also ***delivered by VCDS***, the very system already found not to infringe. Viasat always maintained that, although IPTV and IFE are distinct products sold to different customers, both utilize the same underlying VCDS architecture to deliver content to the aircraft. Sandisk agrees. It repeatedly acknowledged in California that VCDS is the common core of both systems, and its infringement theories here rely again on VCDS delivery. It was this ***same shared VCDS-based delivery mechanism***—not any specific content streamed through it (movies, television, or otherwise)—that the NDCA court found could not meet the "authenticate" limitation of the '400 patent or "secure region" limitation of the '667 patent. Those findings apply with equal force here because Sandisk again accuses those same overlapping components of infringement. The delivery mechanism—VCDS—remains the same regardless of whether it delivers movies or Live TV and thus Sandisk cannot repeatedly sue Viasat's non-infringing delivery mechanism based on the type of content it delivers.

---

[1] Sandisk's appeal of the NDCA's court's judgment is currently pending. *SanDisk Techs., Inc. v. Viasat, Inc.*, 26-01205 (Fed. Cir.).

Because Sandisk asserts the same patents (the ’400 and ’667), against the same accused VCDS-based architecture, invoking the same limitations already found not infringed, issue preclusion bars Counts I and II outright. Issue preclusion attaches not to a product name or label but to factual determinations about how technology operates vis-à-vis the specific requirements of the claims. The issue of whether the VCDS architecture meets the “authenticate” limitation of the ’400 patent or “secure region” limitation of the ’667 patent was litigated, essential to the prior judgment, and arises here in materially indistinguishable form. And Sandisk’s attempt to add two continuation patents—the ’330 and ’854—does not avoid preclusion. Those patents share the same specification as, and recite secure-region limitations materially indistinguishable from, the already-adjudicated ’667 patent. Sandisk’s own amended complaint (“FAC”) in fact admits all three patents concern the same “secure region” invention.

Claim preclusion likewise forecloses Sandisk’s effort to relitigate the NDCA court’s non-infringement findings. Claim preclusion bars subsequent suits involving the same cause of action where the cause of action is the conduct alleged to constitute infringement—here, the design and operation of VCDS. The fact that Sandisk now accuses “IPTV” does not alter the dispositive identity of the accused components or the limitations those components cannot meet.

Finally, to the extent any claims survive issue or claim preclusion, the *Kessler* doctrine bars Sandisk from harassing an adjudged noninfringer by repackaging the same allegations under a different product label. The VCDS-based delivery components of Viasat’s systems were already adjudicated noninfringing; Sandisk cannot relitigate their status simply because the content transmitted is now live TV rather than movies. Under *Kessler*, Viasat is entitled to continue offering its products free from serial harassment through duplicative lawsuits like this one.

The Court should thus dismiss Sandisk’s claims against Viasat in their entirety.

## II. BACKGROUND

### A. The Accused Product: IPTV

Viasat's IPTV product delivers live television programming to aircraft passengers using Viasat's satellite network. D.I. 30 ("FAC") ¶¶ 6-7. The infrastructure through which IPTV is transmitted is Viasat's Video Content Delivery System ("VCDS"), the same system that was the subject of Sandisk's prior NDCA claims and the same system that delivers IFE, the accused system in *SanDisk Techs., Inc. v. Viasat, Inc.*, 22-CV-04376 (N.D. Cal.) ("*Sandisk I*"). As Sandisk itself alleges, Viasat's VCDS transmits the digital IPTV content via the satellite network. FAC ¶ 75. The airborne hardware components through which that content is processed and delivered, including the S4 server and M3 modem, are the same components at issue in *Sandisk I. Id.* ¶¶ 75-76, 128. IPTV content runs on top of the VCDS architecture that Sandisk previously accused of infringement. Sandisk's decision to now accuse "IPTV" rather than "VCDS" simply repackages the same infringement theory the NDCA court already considered and rejected, and its attempts to highlight immaterial differences between the products have no bearing on Sandisk's repetitive infringement theories or the preclusive effect of the NDCA decision.

The relationship between IPTV and VCDS was litigated in *Sandisk I*. There, Sandisk argued that, in addition to Viasat's in-flight entertainment product and VCDS, it also accused the IPTV product. *Sandisk I*, D.I. 188 (Ex. 1). Viasat disagreed, and the Court sided with Viasat. In so doing, Magistrate Judge Kang noted the connection between VCDS and IPTV while finding that connection insufficient to show the IPTV product was itself accused: "The fact that the VCDS may deliver IPTV-formatted content . . . is not the same thing as accusing the IPTV system or product of infringement." *Sandisk I*, D.I. 215 (Ex. 2) at 9. Judge Kang noted that Sandisk's infringement contentions "accus[ed] the VCDS (and not the IPTV product) of receiving the IPTV content." *Id.*

The same is true in Sandisk's complaint and FAC here—Sandisk accuses the VCDS architecture, not IPTV content, of infringing.

Second, Judge Gilliam confirmed in his summary judgment order that Sandisk's infringement contentions "identify IPTV as a type of content that can be accessed via the Accused Products" but they "do not identify IPTV itself as an Accused Product." *Sandisk I*, D.I. 275 ("SJ Order") (Ex. 6) at 18. Accordingly, Judge Gilliam struck Sandisk's expert's opinions on the IPTV product. *Id*. at 18, 27-28. Thereafter, Judge Gilliam held that the underlying VCDS delivery mechanism that is accused here and responsible for delivering content for both IPTV and IFE, did not infringe the "secure region" limitation of the '667 patent or the "authenticate" limitation of the '400 patent. *Id.* at 27-28, 30-31. Thus, had Judge Gilliam allowed Sandisk to advance its IPTV infringement theory, it too would have been found noninfringing because, as here, Sandisk accused the underlying VCDS infrastructure—not the Live TV content delivered by VCDS.

**B. Procedural History**

On July 28, 2022, Sandisk filed suit against Viasat in the Northern District of California, asserting U.S. Patent Nos. 9,424,400 (the "'400 patent"), 10,447,667 (the "'667 patent"), and 8,504,834 (the "'834 patent") against Viasat's in-flight entertainment ("IFE") and wireless IFE ("W-IFE") systems. The court dismissed the '834 patent at the pleading stage, finding it directed to patent-ineligible subject matter under 35 U.S.C. § 101. *Sandisk I*, D.I. 75 (Ex. 3).

Following claim construction briefing and a *Markman* hearing, the NDCA court issued its claim construction order on September 20, 2024, adopting Viasat's proposed constructions on two terms that proved dispositive: the "authenticate" limitation of the '400 patent and the "receiving an indication" limitation of the '667 patent. *Id.*, D.I. 120 ("CC Order") (Ex. 4). In January 2025, Sandisk moved to amend its infringement contentions, which the court denied, finding Sandisk had not been diligent. *Id.*, D.I. 182 (Ex. 5). On October 21, 2025, the NDCA court granted

summary judgment of noninfringement on both the ’400 and ’667 patents and granted Viasat’s motion for summary judgment that plaintiff SDT LLC lacked standing. SJ Order.

Three months later, on January 21, 2026, Sandisk filed this action against Viasat in WDTX, asserting four patents: the ’400 patent, ’667 patent, U.S. Patent No. 11,757,854 (“the ’854 patent”), and U.S. Patent No. 12,273,330 (“the ’330 patent”). D.I. 1 (“Compl.”). On April 10, 2026, Sandisk filed an amended complaint. FAC. The ’854 and ’330 patents are continuations of the ’667 patent.

## III. LEGAL STANDARD

“Issue preclusion . . . bars ‘successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,’ even if the issue recurs in the context of a different claim.” *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted). Regional circuit law governs whether issue preclusion applies. *Soverain Software LLC v. Victoria’s Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). Issue preclusion applies when “(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.” *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).

Under the doctrine of claim preclusion, “a judgment ‘on the merits’ in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action.” *Lawlor v. Nat’l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955). In the Fifth Circuit, claim preclusion applies where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court with proper jurisdiction; (3) there has been a final judgment on the merits; and (4) the same cause of action was involved in both actions. *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). And when there has been a final judgment on the merits, it “extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.” *Mirror Worlds Techs., LLC v. Apple, Inc.*, No. 6:13-CV-419, 2015 WL 11504514, at *2

(E.D. Tex. Dec. 3, 2015) (internal citations omitted). Federal Circuit law applies to the question of "whether a particular cause of action in a patent case is the same as or different from another cause of action." *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014). In a patent suit, essential transactional facts from which the cause of action arises include both the asserted patents and the accused activity. *Id.* at 1349. The later action is generally precluded when "a patentee seeks to assert the same patent against the same party and the same subject matter." *Id*.

Finally, the *Kessler* doctrine precludes claims that would otherwise not be barred by claim or issue preclusion. When "new" products are "essentially the same" as the adjudged non-infringing products, "the 'new' product(s) also acquires the status of a non-infringing device vis-à-vis the same accusing party or its privies," and *Kessler* protects an adjudged non-infringer from "repeated harassment." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056-57 (Fed. Cir. 2014).

## IV. ISSUE PRECLUSION REQUIRES DISMISSAL

Issue preclusion bars Sandisk from again litigating infringement and constructions[2] of the "authenticate" limitation in the '400 patent and "secure region" limitation of the '667 patent—both of which were fully adjudicated in NDCA. Because Sandisk also asserts the "secure region" limitations of the '330 and '854 patents—which share a common specification with the '667 patent and invoke the same "secure region" concept—issue preclusion bars these claims as well.

As a preliminary matter, Sandisk's FAC incorrectly asserts that issue preclusion "cannot attach because the *Sandisk I* court's grant of summary judgment of non-infringement . . . rested on claim constructions that are currently being challenged on appeal before the Federal Circuit." FAC ¶ 54. This is wrong. "[T]he collateral estoppel effect of a prior district court decision is not affected

[2] Issue preclusion also renders prior claim constructions binding. *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357-58 (Fed. Cir. 2017); *see also Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351-52 (Fed. Cir. 2018).

by the fact that an appeal has been taken from the decision." *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014) (citing *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969)). Courts in this circuit have held that issue preclusion applies even when the prior judgment is on appeal. *Medliant Inc. v. Mabute*, No. 1:23-CV-419, 2024 WL 1913123, at *6 (E.D. Tex. May 1, 2024) (applying issue preclusion to a prior district court decision pending on appeal); *TCA Bldg. Co. v. Nw. Res. Co.*, 861 F. Supp. 1366, 1374 (S.D. Tex. 1994) (holding that issue preclusion "applies even if the prior judgment is under appeal").

## A. ISSUE PRECLUSION BARS PLAINTIFFS' CONSTRUCTION AND INFRINGEMENT CLAIMS FOR THE '400 AND '667 PATENTS

### 1. Sandisk Cannot Re-Litigate the "Authenticate" Limitation of the '400 Patent

(a) The Same "Authenticate" Limitation was Already Adjudicated

Sandisk asserts here that the "authenticate" limitation of the '400 patent is infringed by Viasat's IPTV product. But this limitation already was found not infringed ***by the same components accused in this case.***

Specifically, claim 1 of the '400 patent requires "a processor configured to . . . authenticate the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface." FAC ¶ 149. Sandisk's expert Dr. Easttom asserted that this limitation was met by "[redacted]. SJ Order at 30 (citing D.I. 241-2 ("Sandisk's SJ Opp. Br.")) (Ex. 7). The NDCA court granted summary judgment of non-infringement, finding that Sandisk did not explain how the token provides more than mere identification or demonstrates that a device is "trusted," which the Court found was required by the "authenticate" term. *Id.* at 31.

Sandisk's WDTX FAC now asserts the same "authenticate" limitation of the same '400 patent against IPTV, advancing the same "token" theory with the same system components. The WDTX FAC alleges that—again—the claimed "kiosk" is "implemented by at least the onboard ***S4 server*** operating in conjunction with the VCDS client and/or ***M3 modem***." *See* FAC ¶ 150 (emphases added). Although it does not name the intermediate "token" step, the FAC alleges that "when a passenger device requests specific Live TV content, the onboard kiosk receives ***device-specific identifier information*** associated with that portable storage device as part of the device's request and/or as part of a DRM/authorization workflow, and ***uses the identifier to authenticate*** the portable data storage device." *Id.* ¶ 153 (emphases added). Although Sandisk now accuses IPTV rather than IFE, Sandisk relies on the same system components to advance the same argument it previously presented: that the "kiosk" is the S4 server and M3 modem, and its use of device-specific identifiers within a DRM system constitutes "authenticat[ion]" under the '400 patent. *See, e.g.*, Sandisk's SJ Opp. Br.; *Sandisk I*, D.I. 241-13 ("Easttom Rep.") (Ex. 8) ¶¶ 216, 225 ("[redacted]."); *Sandisk I*, D.I. 146-2 ("Sandisk's Infringement Contentions") (Ex. 9) at 50. This argument was made and rejected.

Sandisk's recent attempt to inject the IPTV Ground Segment into the equation as a "remote trusted server" does not remedy the deficiencies of its infringement theory or relieve the preclusive effect of the Court's SJ order. *See* FAC ¶¶ 52-54, 56, 156. Even if "the kiosk uses [unique] identifiers to authenticate each passenger device by communicating with the IPTV Ground Segment" as Sandisk alleges, *see id.*, that does not change that the alleged token theory fails to demonstrate that a device is "trusted" as required by the "authenticate" limitation—the same failure described in the Court's order. *See* SJ Order at 30.

The Federal Circuit has held that issue preclusion bars a second litigation "even where the products are different from the first litigation" when "a close identity exists between the relevant features of the accused device and the device previously determined to be non-infringing such that they are essentially the same." *Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1379-81 (Fed. Cir. 2024) (internal citations omitted). "Accused devices are essentially the same where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Id.* That close identity exists here.

Although IFE and IPTV are different Viasat products, Sandisk's WDTX FAC accuses the overlapping aspects of these products—the same aspects that the NDCA court found non-infringing. As Viasat maintained in NDCA, both IFE and IPTV utilize ***VCDS*** to deliver content to airline passengers. *See, e.g.*, Ex. 1 at 4 ("These documents also showed 'Live Video,' including 'Fubo' and 'IPTV,' were types of 'Content' that can be delivered by Viasat's 'Content Delivery Service' (VCDS)."). And the NDCA court clearly understood that Sandisk only "identif[ied] IPTV as a type of content that can be accessed via the Accused Products but d[id] not identify IPTV itself as an Accused Product." SJ Order at 18 (Judge Gilliam); *see also* Ex. 2 at 9 (Magistrate Judge Kang). Had Sandisk properly included IPTV in its definition of the Accused Product in NDCA, the NDCA court's non-infringement decision on VCDS would have encompassed VCDS delivering IPTV. Sandisk should not be permitted to avoid issue preclusion simply because it failed to follow the NDCA local rules. Now, Sandisk's WDTX FAC identifies IPTV as an accused product but accuses the same aspects of VCDS—the delivery mechanism, not the delivered content—that the NDCA court already determined do not infringe the "authenticate" limitation of the '400 patent. Any differences between IFE content and IPTV content are immaterial to that (or any other) limitation. Indeed, the claims are agnostic to the type of content being transmitted—

whether it is in-flight movies or live TV; they are directed instead to "cryptographic architectures." FAC ¶¶ 39, 46. Sandisk also alleges that the IPTV Ground Segment is a different "remote trusted server." FAC ¶¶ 56, 156. For purposes of Sandisk's "token" theory, this distinction is without a difference. Regardless of which component Sandisk alleges is a "remoted trusted server," Sandisk still fails to explain how the tokens demonstrate that a device is "trusted" or meet the "authenticate" limitation. Sandisk must be precluded from relitigating whether the same components of the same VCDS delivery mechanism infringe the same limitation of the '400 patent.

(b) The "Authenticate" Limitation was Actually Litigated

Claim construction and non-infringement of the "authenticate" limitation of the '400 patent was thoroughly litigated in *Sandisk I*. Construction of the "authenticate" limitation —and whether the term "authenticate" requires confirmation of trust—was fully briefed by the parties and adjudicated in NDCA. *See Sandisk I*, D.I. 103 ("Sandisk's Op. CC Br.") (Ex. 10) at 9-11; *Sandisk I*, D.I. 104 ("Viasat's Resp. CC Br.") (Ex. 11) at 9-12. After a *Markman* hearing, the court adopted Viasat's construction, explaining the specification makes clear that authentication was "*always* for the purpose of confirming the trust level of the devices in question." CC Order at 13-14. Sandisk then presented its "token" theory in summary judgment briefing; *see* Sandisk's SJ Opp. Br. at 19; and in the extensive expert opinions of Dr. Easttom; *see* Easttom Rep. ¶¶ 195-206, 213-76. The NDCA court squarely rejected Sandisk's position, holding that "Sandisk does not explain how the token provides more than 'identification' rather than finding the device is 'trusted.'" SJ Order at 31 (cleaned up). Sandisk had a full and fair opportunity to litigate this argument in NDCA.

(c) Construction and Non-Infringement of the "Authenticate" Limitation were Necessary to the Non-Infringement Decision

The NDCA court's construction of "authenticate" and rejection of Sandisk's "token" theory were necessary to its decision of non-infringement of the "authenticate" limitation. For

issue preclusion, it is well-established that a court's claim construction and non-infringement analysis are necessary components of a summary judgment decision of non-infringement. *See Phil-Insul*, 854 F.3d at 1357-58. The NDCA court's summary judgment was expressly grounded in the construction of "authenticate" and relied directly on its finding of non-infringement of the "authenticate" limitation, which must have preclusive effect. *See* SJ Order at 30-31.

**2. Sandisk Cannot Re-Litigate the "Secure Region" Limitation of the '667 Patent**

(a) The Same "Secure Region" Limitation was Already Adjudicated

The identical issue of non-infringement of the "secure region" limitation also was litigated in NDCA. There, Sandisk alleged that Viasat's IFE system infringed the limitation of the '667 patent requiring "receiv[ing] an indication of the NAS device having a secure region comprising a buffer for streaming media" under what it called the [redacted]. Sandisk's SJ Opp. Br. at 5-6. That theory posited that "Viasat's [redacted] (which includes onboard storage)" was the claimed NAS device, and "a secure portion of that storage—[redacted] was [redacted] [and] the claimed buffer of the secure region" and was "[redacted]." *Id.*; *see also* Easttom Rep. ¶ 553. The NDCA court rejected this theory and found the "secure region" limitation of the '667 patent not infringed. SJ Order at 27-28.

Sandisk's WDTX FAC employs the same theory to assert the same limitation of the '667 patent against the same components. FAC ¶¶ 77-78, 103-05, 128-130. The FAC accuses Viasat's IPTV product, alleging "the digital IPTV content is transmitted to a storage associated with the S4 server (a 'network attached storage (NAS)')" where "live TV content is cached/stored on the storage associated with the S4 server and then can be accessed by individual users." *Id.* ¶ 127. Sandisk further contends "the Accused Product system encrypts external storage devices including the storage associated with the S4 server such that the NAS has a secure region." *Id.* ¶ 128. While

Sandisk argues that the "continuously updated" S4 cache is "unique to the IPTV context," this distinction is irrelevant—Sandisk does not allege—nor could it—that updating the S4 cache in real time affects its underlying architecture, which is what Sandisk accuses of infringement here and what was already found not to infringe. FAC ¶¶ 55, 79, 106, 131. Sandisk sets forth precisely the same theory targeting the same components—the onboard S4 server as a NAS, with an allegedly encrypted buffer/cache as the secure region—that the NDCA court found insufficient.

The shared VCDS delivery mechanism confirms the identity of the issues. As explained *infra* Sections IV.B and V, although IFE and IPTV are different Viasat products, Sandisk's WDTX FAC accuses the same aspects of VCDS—the delivery mechanism, not the delivered content—that the NDCA court already determined do not infringe the specific limitations of the '667 patent. The parties agree that [redacted]. *See* Easttom Rep. ¶¶ 101, 134, 137. The parties also agree that [redacted]. *See* Sandisk's SJ Opp. Br. at 2; Easttom Rep. ¶¶ 134, 138, 327-38. By pinpointing the transmission of IPTV content—delivered via the same VCDS mechanism, [redacted]—Sandisk accuses the same components the NDCA court already found non-infringing. Issue preclusion only requires "a close identity exists between the relevant features of the accused device and the device previously determined to be non-infringing." *Wisconsin Alumni*, 112 F.4th at 1379-81. Sandisk must be bound by the NDCA court's holding that this ***identical*** architecture does not satisfy the "secure region" limitation.

(b) <u>The "Secure Region" Limitation was Actually Litigated</u>

Claim construction and non-infringement of the "secure region" limitation were actually litigated in the prior action. Construction of "secure region"—and whether it requires the processor receive an indication of the presence of the secure region itself—was fully briefed and adjudicated in NDCA. Sandisk's Op. CC Br. at 17-18; Viasat's Resp. CC Br. at 20-21; *Sandisk I*, D.I. 105

("Sandisk's Reply CC Br.") (Ex. 12) at 10. The court rejected Sandisk's construction "because if the system did not have an indication of the presence of the secure region, it would not be able to use that secure region to buffer content." CC Order at 18-19. Sandisk then argued that "the [redacted], thereby characterizing it as a secure storage region." Sandisk's SJ Opp. Br. at 6; *see also* Easttom Rep. ¶ 574. The court held "there is no genuine dispute that Sandisk's [redacted] theory . . . fails to satisfy the 'receive an indication of the NAS device having a secure region' limitation" because "[i]dentifying the [redacted] and "Sandisk's infringement contentions are silent as to how *the processor receives an indication of the* [redacted]." SJ Order at 27-28.

(c) Claim Construction and Non-Infringement of the "Secure Region" Limitation were Necessary to the Non-Infringement Decision

The court's construction and non-infringement analysis of "secure region" were necessary to the summary judgment of non-infringement as a matter of law. SJ Order at 25-28; *see Phil-Insul*, 854 F.3d at 1357-58; *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 89 F.4th 915, 924 (Fed. Cir. 2023); *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1454-55 (Fed. Cir. 1997).

## B. ISSUE PRECLUSION BARS PLAINTIFFS' CONSTRUCTION AND INFRINGEMENT CLAIMS FOR THE '330 AND '854 PATENTS

In addition to the recycled '400 and '667 patents, Sandisk adds two more strikingly similar patents: the '330 and '854 patents are directed to the same invention as, share a common specification with, and claim the same "secure region" as, the '667 patent. Issue preclusion also bars Sandisk from re-litigating the "secure region" limitations of the '330 and '854 patents.

Issue preclusion is not limited to patent claims that are word-for-word identical and "the mere use of different words in these portions of the claims does not create a new issue." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1343 (Fed. Cir. 2013). Here, the two new patents

merely re-word the ’667 patent’s “secure region” limitation: the ’330 patent teaches “***receive an indication of the NAS device*** comprising a buffer for streaming media . . . wherein the buffer ***comprises a secure region*** . . . ,” ’330 patent at 11:9-14, and the ’854 patent teaches “finding a ***storage device*** on the local area network ***with an available secure region*** for storing digital content,” ’854 patent at 11:10-11. The limitations “use slightly different language to describe substantially the same invention.” *Ohio Willow*, 735 F.3d at 1342; *see also Nestle*, 884 F.3d at 1351-52 (applying issue preclusion to a limitation “or its related variation . . . in a similar fashion”).

All three “secure region” limitations raise issues identical to those resolved in *Sandisk I*: whether a secure region exists in storage associated with the S4 server, and whether the indication of that storage must convey the presence of a secure region itself. The ’854 and ’330 patents require the same secure region as the ’667 patent—in fact, Sandisk’s WDTX FAC openly admits that all three patents concern the same invention: “The ’854 Patent, ’330 Patent, and ’667 Patent provide technical solutions by introducing, *inter alia*, ***a secure buffer implemented on a network-attached storage (‘NAS’) device*** located within the user’s local network . . . which allows content to be pre-loaded, time-shifted, and securely buffered without exposing the content to unauthorized users.” FAC ¶ 39 (emphases added); *see also id.* ¶¶ 40, 42–43. The similarities are underscored by the common specification.[3] Any minor difference in wording between the adjudicated and unadjudicated limitations do not “materially alter” the legal analysis, so issue preclusion applies

---

[3] The NDCA court relied on the ’667 specification: “the focus of the ’667 Patent, ***as described by the specification***, is a novel NAS device having a secure region to buffer content from streaming services; ***as such, the claims logically require an indication*** that the NAS device has such a secure region for this buffer.” CC Order at 19 (emphases added). The same portion of the specification is present ***verbatim*** in the ’330 and ’854 patents. *Compare id.* at 3 (citing ’667 patent at 2:30-34), *with* ’854 patent at 2:36-41; ’330 patent at 2:36-41. For issue preclusion, particular weight is given to patents sharing the same specification. *See Papst Licensing GMBH & Co. KG v. Samsung Elecs.*, 924 F.3d 1243, 1246 (Fed. Cir. 2019) (applying issue preclusion where “the same specification also gave rise to” the patents asserted in both proceedings).

with equal force. *Ohio Willow*, 735 F.3d at 1342; *see also Phil-Insul*, 854 F.3d at 1359-60.

Sandisk alleges that the "secure region" limitations of the '854 and '330 patents are met by the same components as for the '667 patent. For the '854 patent, Sandisk again alleges that "the accused IPTV system utilizes a S4 server that includes storage for caching/storing IPTV content"—meaning that, just as for the '667 patent, Sandisk alleges that the claimed secure region exists in the storage associated with the onboard S4 server. FAC ¶ 74. The same is true for the '330 patent: "the digital IPTV content is transmitted to a storage associated with the S4 server (a 'network attached storage (NAS)');" "live TV content is cached/stored on the storage associated with the S4 server and then can be accessed by individual users;" and "the accused system encrypts the storage associated with the S4 server, such that the NAS server has a buffer with a secure region." *Id.* ¶¶ 102, 103, 105. Sandisk's allegations on the secure region of the '854 and '330 patents are the same as those made on the '667 patent in *Sandisk I*, and issue preclusion must apply.

## V. CLAIM PRECLUSION REQUIRES DISMISSAL

In the alternative, claim preclusion bars Sandisk's infringement claims. There can be no dispute that the first three elements of claim preclusion are met. The Plaintiffs here, along with their predecessors in interest, sued Viasat in NDCA. Neither Sandisk nor Viasat disputed that the court had jurisdiction to hear the case, and the court subsequently rendered a final judgment on the merits, finding that Viasat's in-flight entertainment and content delivery systems did not infringe SanDisk's '400 and '667 patents. *See* SJ Order. The application of claim preclusion to SanDisk's claims in this suit thus hinges on whether the second suit is "the same claim or cause of action" as the first. *Duffie*, 600 F.3d at 372. The present suit undoubtedly is the same cause of action as the first because Sandisk accuses the same components of Viasat's systems of infringing the same claim limitations found not infringed in *Sandisk I*. Accusing different content—Live TV—provided by the same non-infringing system does not change that.

Sandisk incorrectly argues claim preclusion cannot apply to the NDCA decision Sandisk appealed. FAC ¶ 54. Again, Sandisk is wrong. "Both Texas and the federal courts hold that a judgment is final for *res judicata* purposes despite the pendency of an appeal." *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, No. SA-09-CV-127-XR, 2010 WL 4117020, at *2 (W.D. Tex. Oct. 19, 2010); *see also Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013). District court judgments simultaneously become final for both appellate review ***and*** claim preclusion. *Clay v. United States*, 537 U.S. 522, 527 (2003) ("[A] federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case . . ."). Sandisk's appeal does not bar the application of claim preclusion here.

### A. CLAIM PRECLUSION BARS PLAINTIFFS' INFRINGEMENT CLAIMS FOR THE '667 AND '400 PATENTS

Claim preclusion bars Sandisk's infringement claims for the '667 and '400 patents because the same Viasat systems accused of infringement here were already found not to infringe those very patents in NDCA, and thus the same cause of action is presented in both litigations.

The Federal Circuit defines a cause of action "by the transactional facts from which it arises." *Senju*, 746 F.3d at 1349. In a patent case, the conduct alleged to constitute infringement is relevant, not the name of the accused product. *Id.* Here, Sandisk's infringement claims arise from the same transactional facts: Sandisk accuses the same Viasat structures of infringing the same claim limitations in the same way as in NDCA. That these structures exist in both Viasat's IPTV product and its non-infringing IFE product is immaterial to the application of claim preclusion.

According to the FAC, Viasat infringes the '667 Patent because IPTV utilizes a secure region on "the storage associated with the S4 server" that is encrypted. FAC ¶ 128. In comparison, in *Sandisk I*, Sandisk asserted that "the S4 server . . . has a secure region comprising a buffer for streaming media" because external storage devices, like the storage on the S4 server, are encrypted.

Ex. 8 ¶ 564. Because Sandisk's infringement claim here centers on the same "accused activity, *Senju*, 746 F.3d at 1348—an alleged buffer on the encrypted S4 server—claim preclusion bars Sandisk from relitigating Viasat's alleged infringement of the '667 patent.

The same is true for Viasat's alleged infringement of the '400 patent. According to the FAC, Viasat's accused product has "a kiosk" "implemented by at least the onboard S4 server operating in conjunction with the VCDS client and/or M3 modem." FAC ¶ 150. The FAC alleges that the kiosk "receives device-specific identifier information associated with [a] portable storage device" which is used "to authenticate the portable data storage device" by "communicating with a remote trusted server" on the ground "through a Conditional Access System ('CAS') or similar DRM system." *Id.* ¶ 153. This is the same argument Sandisk made in *Sandisk I* where it argued that the "the Viasat [redacted]." Sandisk's SJ Opp. Br. at 19. Claim preclusion should thus bar Sandisk from relitigating infringement of the '400 patent.

Sandisk will no doubt argue that claim preclusion cannot apply here because the NDCA court already determined that IPTV was distinct from the accused products in that case. That is true but irrelevant. Although IFE and IPTV are distinct Viasat products, the allegedly infringing functionality identified in Sandisk's FAC is the same as what was accused—and adjudicated—in the prior action. That is, Sandisk chose to assert infringement here based not on any alleged distinct aspects of IPTV, but instead on the components and functionalities of VCDS that already were adjudged to not infringe the '400 and '667 patents. Thus, any differences between Viasat's IPTV and IFE Products—including Sandisk's emphasis on a continuously updated S4 cache and IPTV Ground Segment—are "unrelated to the limitations in the claims of the patent[s]," making the

products the same for purposes of claim preclusion. *Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009) (citation omitted); *id.* at 1285-86 (barring infringement claim where product was different but unchanged as to the claim limitations in the first suit); *see also Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *15 (E.D. Tex. May 12, 2015) (same). Just as a conveyor belt's mechanical operation does not depend on what cargo it carries, VCDS's accused components and functionality are the same regardless of whether the transmitted data packets are a pre-recorded movie or a live broadcast. Sandisk cannot relitigate whether the "belt" (VCDS) infringes every time the "cargo" (content) changes, otherwise defendants like Viasat would face endless litigation over the same non-infringing mechanisms.

Moreover, allowing Sandisk to proceed with its infringement claims here—which are materially indistinguishable from those in *Sandisk I*—would only reward Sandisk for failing to follow the NDCA local rules. The NDCA court found that Sandisk did not sufficiently identify IPTV as an accused product in its infringement contentions. As the court explained, Sandisk's position that "it identified the IPTV product as accused when it 'accurately identified the IFE, W-IFE, and VCDS systems [which]. . . provide Live TV/IPTV content'" was "inconsistent with the Patent Local Rules directives 'to require the plaintiff to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed.'" SJ Order at 17-18 (citations omitted). Sandisk chose not to accuse IPTV despite being clearly aware of its existence. It should not be awarded a second bite at the apple in this Court. *See Xiaohua Huang v. Huawei Technologies Co., Ltd.*, 787 Fed. App'x 723, 724-26 (Fed. Cir. 2019) (non-precedential) (barring infringement claim against accused products party was ***denied leave to add in the prior case***).

### B. CLAIM PRECLUSION BARS PLAINTIFFS' INFRINGEMENT CLAIMS FOR THE '854 AND '330 PATENTS

Claim preclusion also bars Sandisk's infringement claims for the '330 and '854 patents.

Both the ’854 and ’330 patents, like the ’667 patent, require a “secure region.” FAC ¶¶ 72, 99. And these secure regions exist in the context of the same invention as the ’667 patent. *Id*. ¶¶ 39-43. As discussed above, *supra* Section IV.B, Sandisk’s allegations regarding the secure region of the ’854 and ’330 patents are the same as those made (and rejected) in *Sandisk I*.

Based on its own descriptions of the ’667, ’854, and ’330 patents, Sandisk must demonstrate the existence of a secure region to prove infringement of each. However, the NDCA court already found Sandisk failed to prove Viasat’s S4 server has a secure region; thus this Court should apply claim preclusion to bar Sandisk’s infringement claims for the ’854 and ’330 patents.

## VI. THE *KESSLER* DOCTRINE WARRANTS DISMISSAL

The remainder of Sandisk’s claims not already barred by claim or issue preclusion must be dismissed under the *Kessler* doctrine. *See Kessler v. Eldred*, 206 U.S. 285 (1907). As the Federal Circuit explained, after an alleged infringer prevails in demonstrating noninfringement and “when the devices in the first and second suits are ‘essentially the same,’ the ‘new’ product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies.” *Brain Life*, 746 F.3d at 1057. This doctrine “fills the gap” between claim and issue preclusion, “allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment.” *Id.* at 1056. Two requirements apply: (1) the defendant must be an adjudged non-infringer, and (2) the earlier judgment against the plaintiff must have held that the same activity did not infringe the patent. *Id.* In other words, the *Kessler* doctrine bars a second litigation of the same patents, even if different devices are accused, when they have “virtually identical elements.” *Golden v. United States*, No. 2024-2256, 2025 WL 900873, at *2-3 (Fed. Cir. Mar. 24, 2025); *see also Askan v. FARO Techs., Inc.*, No. 2022-2117, 2023 WL 4101351, at *3 (Fed. Cir. June 21, 2023) (applying *Kessler* doctrine where plaintiff “failed to raise a genuine issue of material fact that the products in the prior litigation and the current litigation were not essentially the same”).

Viasat is an adjudged non-infringer. *See* SJ Order. And the NDCA court held that the same activity—using VCDS, S4 server, and M3 modem to transmit content—did not infringe the '400 and '667 patents. As explained above, the products in the NDCA suit (IFE) and WDTX suit (IPTV) rely on the same system architecture (S4 and VCDS) regardless of the type of content (IFE or IPTV) transmitted. The court need only consider whether "the overriding issue" here is "the same legal issue . . . considered and rejected in the California case[]." *Adaptix*, at *7. Sandisk's WDTX FAC advances the same legal arguments as in NDCA—that the S4 server and M3 modem are the kiosk using device-specific identifiers, and the S4 server is a NAS with a secure region. IPTV thus acquires the "status of a noninfringing device vis-à-vis the same accusing party" against "all claims that were brought or could have been brought in the first suit." *Brain Life*, 746 F.3d at 1057-59.

The *Kessler* doctrine precludes Sandisk from asserting any claims of the '400 or '667 patents against Viasat's IFE and IPTV products. *See SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1320, 1322-25 (Fed. Cir. 2015) (applying *Kessler* doctrine where second litigation attempts to re-assert claims not permitted in the first ). It also bars Sandisk's assertion of the '330 and '854 patents.[4] Sandisk tried to amend its contentions to accuse IPTV in NDCA and failed. It now brings those same rejected claims against IPTV in WDTX. This conduct embodies "exactly th[e] type of litigation harassment" the *Kessler* doctrine guards against. *Wisconsin Alumni*, 112 F.4th at 1385.

## VII. CONCLUSION

Viasat respectfully requests that the Court grant its motion to dismiss.

---

[4] The *Kessler* doctrine also precludes Sandisk from asserting the similar "secure region" limitations of the '330 and '854 patents. The *Kessler* Doctrine can "apply to unadjudicated patents if the previously adjudicated patent and the unadjudicated patents are 'patentably indistinct.'" *Corning Inc. v. Wilson Wolf Manuf. Corp.*, 569 F. Supp. 3d 920, 933 (D. Minn. 2021) (internal quotation omitted). As described *supra* Sections IV.B, V.B, the '330 and '845 patents are "patentably indistinct" from the '667 patent: they share the same specification and include "secure region" limitations indistinct from the adjudicated '667 patent.

Dated: May 8, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Patrick D. Curran*

Patrick D. Curran (MA State Bar No. 568701)
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone: (617) 712-7100
Facsimile: (617) 712-7200
patrickcurran@quinnemanuel.com

John Bash (TX State Bar No. 24067504)
Evan Pearson (TX State Bar No. 24121403)
300 West 6th St, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com
evanpearson@quinnemanuel.com

*Attorneys for Defendant Viasat, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned hereby certifies that, on May 8, 2026, all counsel of record who have appeared in this case were served with a copy of the foregoing document via email.

Date: May 8, 2026

*/s/ Patrick D. Curran*
Patrick D. Curran