**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **SANDISK TECHNOLOGIES, INC. and SANDISK STORAGE MALAYSIA SDN. BHD.,**<br>Plaintiffs,<br>v.<br>**VIASAT, INC., and GIGCASTERS, LLC,**<br>Defendants. | **Civil Action No. 7:26-cv-00019**<br>**Jury Trial Demanded** |

**DEFENDANT VIASAT, INC.'S OPPOSED TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....1

II. BACKGROUND ....2

- A. Prior Litigation and Procedural History ....2
- B. The Accused Product: IPTV ....4
- C. Viasat's Evidence And Witnesses Are Concentrated In NDCA ....4
- D. Sandisk And Relevant Evidence Are Located In California ....5
- E. Additional Third-Party Witnesses Are In NDCA ....6

III. LEGAL STANDARD ....6

IV. THIS CASE AGAINST VIASAT SHOULD BE TRANSFERRED TO NDCA ....7

- A. This Case Could Have Been Brought In NDCA ....7
- B. The Public Interest Factors Favor Transfer To NDCA ....7
  1. Interests Of Judicial Economy And Justice Favor Transfer ....7
  2. The Local Interest Of NDCA Favors Transfer ....9
  3. Administrative Difficulties, Familiarity With The Governing Law, And Conflicts Of Law Are Neutral Factors ....10
- C. The Private Interest Factors Also Favor Transfer To NDCA ....10
  1. The Cost Of Attendance For Willing Witnesses Favors Transfer ....10
  2. The Relative Ease Of Access To Sources Of Proof Favors Transfer ....12
  3. Availability Of Compulsory Process For Third Parties Favors Transfer ....13
  4. The "Other Practical Problems" Factor Favors Transfer ....14

V. CONCLUSION ....14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*10Tales, Inc. v. TikTok Inc.*,
2021 WL 2043978 (W.D. Tex. May 21, 2021) ....................12

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. Mar. 28, 2013) ....................13, 15

*In re Amazon.com, Inc.*,
2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) ....................6

*In re Apple Inc.*,
2021 WL 5291804 (Fed. Cir. Nov. 15, 2021)....................12

*Brown v. New York*,
947 F. Supp. 2d 317 (E.D.N.Y. 2013) ....................9

*Correct Transmission LLC v. ADTRAN, Inc.*,
2021 WL 1967985 (W.D. Tex. May 17, 2021) ....................16

*Cortex MCP, Inc. v. Visa, Inc.*,
2023 WL 11990868 (W.D. Tex. Nov. 3, 2023)....................11

*DDC Tech., LLC v. Google LLC*,
2023 WL 2518846 (N.D. Tex. Mar. 14, 2023) ....................6

*DH Int'l Ltd. v. Apple Inc.*,
2024 WL 4119374 (W.D. Tex. Aug. 30, 2024)....................10, 11, 12, 14

*In re DISH Network L.L.C.*,
2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)....................15

*Emerging Auto. LLC v. Kia Corp.*,
2024 WL 3170398 (E.D. Tex. June 25, 2024)....................15

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990)....................9

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)....................12

*In re Google LLC*,
2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ....................11, 12, 13

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021)....................13, 14

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ....................11

*Invitrogen Corp. v. Gen. Elec. Co.*,
2009 WL 331891 (E.D. Tex. Feb. 9, 2009) ....................9

*L2 Mobile Techs. LLC v. Google LLC*,
6:21-cv-358-ADA, Dkt. 52 (W.D. Tex. Jan. 7, 2022) (attached as Ex. 6) ....................15

*LG Elecs. Inc. v. Advance Creative Comput. Corp.*,
131 F. Supp. 2d 804 (E.D. Va. 2001) ....................9

*In re Nintendo Co., Ltd.*,
544 Fed. App'x. 934 (Fed. Cir. 2013)....................6

*In re Nintendo*,
589 F.3d 1194 (Fed. Cir. 2009)....................14

*Regents of the Univ. of California v. Eli Lilly & Co.*,
119 F.3d 1559 (Fed. Cir. 1997)....................9

*In re Samsung Elecs. Co.*,
2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) ....................13

*SanDisk Technologies, Inc. v. Viasat, Inc.*,
26-01205 (Fed. Cir.) ....................4

*Sandisk Technologies, Inc. v. Viasat, Inc.*,
No. 4:22-cv-04376-HSG (N.D. Cal.)....................1

*Staktek Grp. L.P. v. Kentron Techs., Inc.*,
2007 WL 9702380 (W.D. Tex. Mar. 7, 2007) ....................14

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ....................13

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
2010 WL 2771842 (E.D. Tex. July 13, 2010) ....................9, 10

*Valtrus Innovations Ltd. v. Google LLC*,
2025 WL 2076627 (N.D. Tex. July 22, 2025)....................11

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ....................6, 7, 15

*In re Volkswagen of Am., Inc.*,
566 F.3d 1349 (Fed. Cir. 2009) .......... 9

*WAG Acquisition, L.L.C. v. Google LLC*,
2022 WL 9569437 (W.D. Tex. Oct. 5, 2022) .......... 11, 15

*Wyatt v. Kaplan*,
686 F.2d 276 (5th Cir. 1982) .......... 14

*XY, LLC v. Trans Ova Genetics, LC*,
2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) .......... 14

**Statutes**

28 U.S.C. § 1400(b) .......... 9

28 U.S.C. § 1404(a) .......... 1, 6, 9

35 U.S.C. § 101 .......... 1, 3

35 U.S.C. § 285 .......... 3

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(B) .......... 15

## I. INTRODUCTION

This is a classic case of forum shopping. Plaintiffs Sandisk Technologies, Inc. and SanDisk Storage Malaysia Sdn. Bhd. (together, "Sandisk") spent over three years litigating the same patents and technology at issue here before the Northern District of California ("NDCA"). But Sandisk recently lost on summary judgment and was ordered to show cause why it should not be sanctioned for its litigation conduct. Sandisk now seeks to litigate the same patents here, hoping this Court will give it a better result. Such tactics undermine the fundamental interests of judicial economy and justice that § 1404(a) exists to protect.

In 2022, Sandisk filed suit in NDCA against ***only*** Defendant Viasat, Inc. ("Viasat"), alleging infringement of U.S. Patent Nos. 9,424,400 and 10,447,667[1] by Viasat's in-flight entertainment system and content delivery service. *Sandisk Technologies, Inc. v. Viasat, Inc.*, No. 4:22-cv-04376-HSG (N.D. Cal.) ("*Sandisk I*"). Over the three-plus year litigation, the NDCA court dismissed one patent under 35 U.S.C. § 101, held a *Markman* hearing, denied Sandisk's motion to amend its infringement contentions, denied several discovery motions brought by Sandisk, and eventually granted Viasat's motion for summary judgment of noninfringement of the remaining patents. The NDCA court also granted Viasat's motion for summary judgment that the entity Sandisk Technologies LLC ("SDT") lacked standing, finding Sandisk "wasted the parties' and the Court's time and resources" and ordered Sandisk to show cause why it should not be sanctioned.

Sandisk now seeks refuge in this District. Indeed, Sandisk filed suit here knowing this case has no connection to the Western District of Texas ("WDTX"), but significant connections to NDCA. Judge Gilliam has extensive familiarity with the technology, two of the four Sandisk

[1] A third asserted patent was dismissed mid-case. The '400 and '667 patents are the same ones asserted here; the other two patents asserted in this case, U.S. Patent Nos. 11,757,854 and 12,273,330, are continuations of the '667 patent (collectively, "Sandisk Patents").

Patents, and the accused systems. And because Sandisk has asserted the same patents against the same technology, one of the key disputes in this case will concern the application of claim and issue preclusion, as discussed in Viasat's pending motion to dismiss. D.I. 36. Judge Gilliam is undoubtedly best suited to determine if those doctrines apply here based on the scope of his own orders in *Sandisk I*. Furthermore, several relevant witnesses, including Viasat employees, inventors, and prior artists, are located in NDCA and California. None are located in this District.

Sandisk is well aware of these facts and the strong connection to NDCA. That is precisely why, at this late date, it added Gigcasters, LLC ("Gigcasters")—with headquarters in Texas—in a transparent attempt to connect this matter to this District as it seeks a second bite at the apple. But as Sandisk's Complaint makes clear, Gigcasters had and has no involvement with the systems and devices actually accused of infringement in this action and thus cannot be the anchor that holds the case in this District. If the Court grants Gigcasters' pending motion to dismiss the claims against it, or grants Viasat's motion to sever and stay the action against Gigcasters, the Court should transfer the remaining claims against Viasat to NDCA where the Court indisputably has familiarity with the patents, the parties, and the technology, and where resolution of the case against Viasat would eliminate or at least significantly streamline any case against Gigcasters.

Because the transfer factors clearly weigh in favor of transfer, and because Gigcasters is, at best, a peripheral party added solely to frustrate transfer to a district with extensive familiarity with the issues presented in this case, the Court should sever and stay the claims against Gigcasters, D.I. 37, to the extent it has not already dismissed them, D.I. 35, and transfer this action back to NDCA.

## II. BACKGROUND

### A. Prior Litigation and Procedural History

On July 28, 2022, Sandisk filed suit against Viasat in NDCA, asserting the '400 and '667

patents, as well as U.S. Patent No. 8,504,834 (the "'834 patent") against Viasat's in-flight entertainment ("IFE") and wireless IFE ("W-IFE") systems. The court dismissed the '834 patent at the pleadings stage as invalid under 35 U.S.C. § 101. *Sandisk I*, D.I. 75 (D.I. 21-4).

Following briefing and a *Markman* hearing, the NDCA court issued its claim construction order on September 20, 2024, adopting Viasat's proposed constructions on two terms that would later prove dispositive: the "authenticating" limitation of the '400 patent and the "receiving an indication" limitation of the '667 patent. *Id.*, D.I. 120 (D.I. 21-5). At an October 15, 2024, case management conference, the NDCA court explicitly warned Sandisk that it should not proceed without viable infringement positions under the court's constructions, and stated it would seriously consider granting fees if Sandisk did so. *Id.*, D.I. 126 (Ex. 13), 260-1 (Ex. 14) ¶ 2, 284-1 (Ex. 15) ¶ 2. In January 2025, Sandisk moved to amend its infringement contentions, which the court denied, finding Sandisk had not been diligent. *Id.*, D.I. 182 (D.I. 21-6). On October 21, 2025, Judge Gilliam granted summary judgment of noninfringement on both the '400 and '667 patents, and entered judgment for Viasat. *Id.*, D.I. 274 (Ex. 16) ("SJ Order") (redacted order).

The NDCA court also presided over extensive standing litigation arising from Sandisk's persistent refusal to clarify which plaintiff held which rights to the Sandisk Patents. After years of motion practice and discovery, the NDCA court granted Viasat's motion for summary judgment that plaintiff SDT lacked standing to enforce the '400 and '667 patents. SJ Order at 37. In its summary judgment order, the Court also issued an order to show cause why Sandisk's counsel should not be sanctioned in connection with the standing litigation. *Id.* at 39. Viasat filed a motion for attorneys' fees under 35 U.S.C. § 285 on November 4, 2025, and the court held a hearing on both the order to show cause and the fees motion on December 18, 2025. *Id.*, D.I. 284 (Ex. 17); *id.*, D.I. 300 (Ex. 18). The court recently denied both motions, *id.*, D.I. 307 (Ex. 21), and Sandisk's

appeal of the NDCA court's rulings is on-going. *SanDisk Technologies, Inc. v. Viasat, Inc.*, 26-01205 (Fed. Cir.).

On January 21, 2026, Sandisk filed the present action. D.I. 1; D.I. 30 ("FAC").

### B. The Accused Product: IPTV

The Complaint accuses Viasat's delivery of internet protocol television (IPTV) content to airline passengers via Viasat's satellite network. FAC ¶¶ 6-7. IPTV content is transmitted through Viasat's Video Content Delivery System ("VCDS"), ***the same system that was the subject of Sandisk's prior unsuccessful NDCA infringement claims***. SJ Order at 30-31. The airborne hardware components that process and deliver that content, including the S4 server and M3 modem, are the same hardware components at issue in *Sandisk I* and are the same components Sandisk now accuses of infringement in this case. *See* FAC ¶¶ 75–76, 128; SJ Order at 28. The relationship between IPTV and VCDS is not a new issue. As discussed further in Viasat's motion to dismiss on the basis of claim and issue preclusion (D.I. 36), IPTV, like IFE, is content delivered using VCDS. Furthermore, in granting summary judgment in *Sandisk I*, Judge Gilliam confirmed that Sandisk's infringement contentions "identify IPTV as a type of content that can be accessed via the Accused Products" even though they "do not identify IPTV itself as an Accused Product." SJ Order at 18. Regardless of whether the content being delivered is labeled "IPTV" or "IFE," the underlying accused infrastructure is the same and that infrastructure was already found to be noninfringing in *Sandisk I*.

### C. Viasat's Evidence And Witnesses Are Concentrated In NDCA

Viasat is headquartered in Carlsbad, California and has an office in San Jose, California (in NDCA). Wilson Decl. ¶ 3. The accused functionalities were designed, developed, and implemented in California and Massachusetts. *Id.* ¶ 4.

Employees working on delivery of IPTV content to in-flight passengers work at Viasat's

Carlsbad headquarters, with additional employees located in New York, New Jersey, Massachusetts, Arizona, Utah, Illinois, England, and India. *Id.* ¶ 5. The documents and records related to the accused product, including relevant technical or electronic documents, were largely created and maintained in California, where the custodians with knowledge of the existence, location, and substance of those documents also are located. *Id.* ¶ 6. Viasat is not aware of any relevant witnesses or documents in this District. *Id.* ¶¶ 5-6.

### D. Sandisk And Relevant Evidence Are Located In California

Sandisk's corporate headquarters is in Milpitas, California (in NDCA) and Sandisk has an additional office in Irvine, California. Ex. 1. The Sandisk Patents are all closely tied to NDCA.[2] All four of the Sandisk Patents were prosecuted in NDCA. At the time of the respective patent applications, the two inventors of the '667, '330, and '854 patents, Dean Jenkins and Robert Ryan, were both residents of California, and Sandisk listed its San Jose, California (in NDCA) address in each of the applications. Exs. 3-5. To Viasat's knowledge, both inventors still live in California. Curran Decl. ¶¶ 7, 9. The '400 patent application and inventors similarly are tied to NDCA and California. Of the three inventors, Lambertus Hesselink lived in NDCA and Danny Ybarra lived in California at the time of the application and Sandisk listed its Irvine, California address in each of the applications.[3] Ex. 2. To Viasat's knowledge, both still live in NDCA and California. Curran Decl. ¶¶ 8, 10. All five inventors were subpoenaed and deposed in the NDCA *Sandisk I* action. Curran Decl. ¶¶ 7-11. Furthermore, Irvine, California-based counsel Chang & Hale LLP were the prosecuting attorneys for the '400 and '667 patents. Curran Decl. ¶ 12. Thus, Sandisk, its likely trial witnesses, and its relevant evidence are located in or near NDCA, not in WDTX.

---

[2] The patent applications all list Western Digital Technologies, Inc. ("WDT"). WDT later transferred its rights in the Sandisk Patents to [Sandisk Technologies, Inc.]" SJ Order at 33-34.

[3] Only one '400 patent inventor, David Blankenbeckler, was living outside of California (in Colorado) at the time of application and, to Viasat's knowledge, is currently. Curran Decl. ¶ 11.

### E. Additional Third-Party Witnesses Are In NDCA

Numerous third-party witnesses and/or entities with knowledge likely relevant to Viasat's defenses appear to be in California and specifically NDCA. At this early stage, Viasat has not completed an exhaustive prior art search, particularly for the new, '330 and '854 patents. However, much of the *Sandisk I* prior art will be relevant here given the substantial subject matter overlap. At least four of the prior artists subpoenaed in *Sandisk I* are located in California (one in NDCA): 1) Xperi Inc. (located in San Jose, California), 2) Rambus, Inc. (located in Glendale, California), 3) Secure Content Storage Association (located in Glendale, California), 4) Verimatrix (located in San Diego, California), and Viasat is not aware of any prior artist in Texas. Curran Decl. ¶¶ 3-6.

## III. LEGAL STANDARD

A "court may [] sever any claim against a party" to facilitate transfer. *In re Nintendo Co., Ltd.*, 544 Fed. App'x. 934, 938 (Fed. Cir. 2013). "[T]he inclusion of a defendant only peripherally involved in, or indirectly connected to, the alleged wrongdoing should not preclude severance and partial transfer to a more convenient forum." *In re Amazon.com, Inc.*, 2022 WL 17688072, at *2 (Fed. Cir. Dec. 15, 2022). The analysis is different than traditional severance motions "[w]hen a party seeks to both transfer and sever its claims" with both "the Federal Circuit and the Fifth Circuit direct[ing] courts to consider and weigh the 'comparative inconvenience of splitting the suit versus the advantages to be gained from partial transfer.'" *DDC Tech., LLC v. Google LLC*, 2023 WL 2518846, at *3 (N.D. Tex. Mar. 14, 2023) (quoting *In re Amazon.com, Inc.*, 2022 WL 17688072, at *2).

A court may transfer a case "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). It first considers "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (citation omitted). If so, courts weigh eight factors to determine if "good cause" exists for transfer:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; … (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[,] … [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (citation omitted).

## IV. THIS CASE AGAINST VIASAT SHOULD BE TRANSFERRED TO NDCA

### A. This Case Could Have Been Brought In NDCA

With Gigcasters either dismissed or severed from the case, the threshold transfer requirement is met since Viasat has an office in NDCA and has previously submitted to personal jurisdiction in NDCA in *Sandisk I*. *See* 28 U.S.C. § 1400(b).

### B. The Public Interest Factors Favor Transfer To NDCA

#### 1. Interests Of Judicial Economy And Justice Favor Transfer

Judicial economy gained by Judge Gilliam's familiarity with the Sandisk Patents decisively favors transfer. Courts consistently find that the existence of a related action in the transferee district is a "strong factor" in weighing judicial economy and that the presence of multiple lawsuits involving the same underlying issues is a "paramount consideration when determining whether a transfer is in the interest of justice." *Brown v. New York*, 947 F. Supp. 2d 317, 325–26 (E.D.N.Y. 2013) (collecting cases); *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Patent cases are no exception. *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). A situation where two cases involve the same issues in different district courts "leads to the wastefulness of time, energy, and money" that is precisely what "§ 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (citations omitted).

Applying these principles of judicial economy and justice in patent cases, courts regularly transfer cases to another district where, as here, the case involves patents and related technical

issues previously litigated in that district. *See, e.g.*, *Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331891, at *6 (E.D. Tex. Feb. 9, 2009) (transferring case to a court with "extensive involvement with three of the six patents at issue"); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 2771842, at *8 (E.D. Tex. July 13, 2010) (transferring because duplicating prior court's efforts related to the patents-in-suit and underlying technology would be an "inefficient use of judicial resources"); *LG Elecs. Inc. v. Advance Creative Comput. Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) (transferring to district that had previously construed one of the patents-in-suit).

Here, Judge Gilliam has deep familiarity with the patents, the technical details, and the issues. Sandisk elected to sue Viasat in NDCA for infringing the same ’400 and ’667 patents asserted in this case, and the two new asserted patents are continuations of the ’667 patent. Over several years of litigation and copious amounts of briefing, Judge Gilliam construed the patents, settled issues about infringement contentions, engaged with expert reports and motions to strike, and ultimately granted summary judgment of noninfringement as to the ’400 and ’667 patents. SJ Order. Sandisk's Complaint "offers no technical details that distinguish the accused products in this case from those considered in the [previous] action." *U.S. Ethernet Innovations*, 2010 WL 2771842, at *7. A central issue in this case will be the application of claim and issue preclusion. *See* D.I. 36. Judge Gilliam is in the best position to make those decisions given his familiarity with his own summary judgment findings on the same VCDS components Sandisk seeks to relitigate here (now delivering television rather than movies). Judge Gilliam's familiarity with the underlying NDCA record best positions him to evaluate the preclusive effects of his prior rulings.[4]

Moreover, Sandisk's decision to file in this District while its appeal of the NDCA judgment

---

[4] NDCA's familiarity also extends to the parties' discovery disputes. *See Sandisk I*, D.I. 183 (Ex. 19), 196 (Ex. 20), 215 (D.I. 21-3).

is pending creates a significant risk of duplicative litigation. Should the Federal Circuit vacate the NDCA judgment and remand, two different courts would simultaneously adjudicate the same two patents against the same VCDS platform, and the same invalidity arguments, with the same prior art, against those same patents. Transferring to NDCA ensures these related proceedings can be consolidated, promoting judicial economy and eliminating the risk of inconsistent outcomes.

### 2. The Local Interest Of NDCA Favors Transfer

In considering transfer, courts evaluate whether there is "a local interest in deciding local issues at home." *DH Int'l Ltd. v. Apple Inc.*, 2024 WL 4119374, at *6 (W.D. Tex. Aug. 30, 2024). That evaluation focuses on the "significant connections between a particular venue and the events that gave rise to a suit"; it does not focus on the parties' general presence in the judicial district. *Id.* (quoting *In re Google LLC*, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021)). Here, NDCA has an established local interest in deciding this matter. The '667, '330, and '854 patent applications list addresses in San Jose, California, in NDCA. Exs. 3-5. Similarly, the '400 patent is also listed in California and has an inventor who lives in NDCA. Ex. 2. That "[t]he patented technology was invented in, and the patents prosecuted from," NDCA demonstrates that the local interest factor favors transfer. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023).

Additionally, much of the known prior art exists in NDCA, and none is in WDTX. *Cortex MCP, Inc. v. Visa, Inc.*, 2023 WL 11990868, at *8 (W.D. Tex. Nov. 3, 2023) ("[T]he Northern District of California has an interest in adjudicating disputes regarding prior art from its inventors."); *see also Valtrus Innovations Ltd. v. Google LLC*, 2025 WL 2076627, at *9 (N.D. Tex. July 22, 2025) (finding NDCA had a "stronger local interest in the case" than the transferor forum because "much of the relevant prior art" was developed in NDCA).

#### 3. Administrative Difficulties, Familiarity With The Governing Law, And Conflicts Of Law Are Neutral Factors

The remaining public-interest factors are neutral. Although this Court's default schedule could lead to a trial date sooner than the average time to trial in NDCA, given Judge Gilliam's existing familiarity with the specific patents in this case, it is likely that he could resolve this case more expeditiously than this Court. In any event, when the "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *WAG Acquisition, L.L.C. v. Google LLC*, 2022 WL 9569437, at *7 (W.D. Tex. Oct. 5, 2022). Furthermore, "neither discovery nor a *Markman* hearing have occurred in this case" so "transfer at this stage of litigation would not likely create any meaningful delays." *10Tales, Inc. v. TikTok Inc.*, 2021 WL 2043978, at *5 (W.D. Tex. May 21, 2021).

As to the remaining public factors, there are no conflicts of law and both forums are equally able to apply patent law. *DH Int'l*, 2024 WL 4119374, at *6.

### C. The Private Interest Factors Also Favor Transfer To NDCA

#### 1. The Cost Of Attendance For Willing Witnesses Favors Transfer

The convenience-of-witnesses factor focuses on "the cost of attendance" of "willing witnesses," both party and non-party. *DH Int'l*, 2024 WL 4119374, at *4. Typically, this is the "most important factor" in a transfer analysis. *Id.*; *Google LLC*, 2021 WL 4427899, at *3; *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (same). This factor "weigh[s] substantially in favor of transfer" when "no witnesses reside within the" transferor venue. *Google LLC*, 2021 WL 4427899, at *4; *In re Apple Inc.*, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) ("We have repeatedly held that a district court's failure to weigh this factor in favor of transfer constitutes a clear abuse of discretion when there are several witnesses located in the transferee forum and none in the transferor forum.") (quotations omitted). That is exactly the case here.

Viasat expects to call witnesses that reside in California, including employees at Viasat's headquarters in Carlsbad, California—one location where the accused functionalities of Viasat's IPTV product were designed, developed, and implemented. Wilson Decl. ¶ 4.[5] If this case is tried in WDTX, those witnesses will need to spend days away from their homes and work in order to testify. On the other hand, if this case is tried in NDCA, these witnesses will suffer minimal interruption to their work and home lives. Meanwhile, no relevant Viasat witnesses work or reside in this District. *Id.* ¶ 5. This strongly favors transfer. *See Google LLC*, 2021 WL 4427899, at *4.

Likewise, it does not appear that Sandisk's potential witnesses are in this District. Rather, all but one of the inventors of the Sandisk Patents are located in California, including one inventor living in NDCA. Exs. 2-5. California is far more convenient for the four California-based inventors than Waco and Midland, and comparable for the one Colorado-based inventor. Exs. 7-8 (travel from Colorado); Exs. 9-10 (travel from Orange County); Exs. 11-12 (travel from Portola Valley). Further, courts consistently hold "the convenience to non-party witnesses is afforded greater weight than that of party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 875 (E.D. Tex. Mar. 28, 2013). The necessity of calling multiple non-party witnesses, the patent inventors (to the extent not employees of Sandisk) and multiple prior artists, weighs in favor of transfer.

Finally, Sandisk's Complaint points to Viasat's general presence in WDTX and the state of Texas through the mere existence of its Austin, Midland, College Station, and Houston offices. FAC ¶¶ 12, 26, 30. But the general presence of employees "who have no [technical] knowledge of the accused functionality" does not weigh against transfer. *In re Samsung Elecs. Co.*, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023); *In re TikTok, Inc.*, 85 F.4th 352, 356-57 (5th Cir. 2023)

[5] Potential Viasat witnesses in New York, New Jersey, Massachusetts, Arizona, Utah, Illinois, England, and India "will likely have to leave home for an extended period" of time regardless of transfer. *Google LLC*, 2021 WL 4427899, at *5 (quotation omitted).

(TikTok's "300-person office in Austin" did not matter because none had relevant information); *see In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (giving no weight to "Google employees in Austin, Texas" without proof that they worked on accused features of the product). What matters is the location of witnesses with knowledge of the accused features. Here, no Viasat employees working on the accused functionalities for Viasat's IPTV product are in Texas, much less in WDTX. Wilson Decl. ¶¶ 5, 7, 8.

Sandisk alleges that "Viasat still maintains employees and a substantial business presence in and around Midland, Texas" (FAC ¶ 13), but Viasat closed its Midland office in 2024. Wilson Decl. ¶ 8. Viasat updated its website to accurately reflect the closure. Sandisk's statement on information and belief about Viasat's presence in Texas, at least to the extent it implies that Viasat has employees involved with the accused product in Texas, is directly contradicted by Ms. Wilson's sworn declaration. *Id.* The Court should not accept Sandisk's allegation as true. *Staktek Grp. L.P. v. Kentron Techs., Inc.*, 2007 WL 9702380, at *2 (W.D. Tex. Mar. 7, 2007) ("Allegations in the plaintiff's complaint are taken as true except to the extent that they are contradicted by the defendant's affidavits." (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n.13 (5th Cir. 1982)).

For these reasons, the most important private factor in the transfer analysis—the convenience of the witnesses—strongly favors transfer to NDCA.

### 2. The Relative Ease Of Access To Sources Of Proof Favors Transfer

"In 'patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'" *DH Int'l*, 2024 WL 4119374, at *3 (quoting *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009)). Thus, "[i]n determining the ease of access to sources of proof, [courts] look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *DH Int'l*, 2024 WL 4119374, at *3 n.1 (that some evidence is "electronic does not mean

that access is uniform" across districts; courts look to the "location of document custodians and location where documents are created and maintained"); *Google LLC*, 2021 WL 5292267, at *2.

This factor favors transfer in this case. The accused functionalities for Viasat's IPTV product were primarily designed and developed by Viasat's engineers in California or in collaboration with teams based in California. Wilson Decl. ¶¶ 4-5. Furthermore, the electronic documents related to the accused product and associated systems will be easier to access in NDCA because witnesses with knowledge about the existence, locations, and substance of those documents are in California. *Id.* ¶ 6. Indeed, Viasat has not identified any relevant documents in this District. But relevant technical documents were primarily created and are primarily maintained in California. *Id.* ¶ 6. As to third party evidence, one inventor is located in NDCA, three others are in California, and at least four prior artists are in California.

These facts favor transfer. *WAG*, 2022 WL 9569437, at *4 (factor favored transfer where "[m]ore sources of proof likely reside in, and are likely more easily accessed in, the NDCA than the WDTX"); *L2 Mobile Techs. LLC v. Google LLC*, 6:21-cv-358-ADA, Dkt. 52, at 7-10 (W.D. Tex. Jan. 7, 2022) (third-party source code in LA favored transfer to NDCA) (attached as Ex. 6).

**3. Availability Of Compulsory Process For Third Parties Favors Transfer**

Transfer is favored where, as here, the transferee district has subpoena power over a greater number of non-party witnesses whose attendance may require a court order. *Adaptix*, 937 F. Supp. 2d at 874 (E.D. Tex. Mar. 28, 2013). When there is no indication that non-party witnesses are willing to appear without it, a court must presume that compulsory process will be required. *See In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021); *Emerging Auto. LLC v. Kia Corp.*, 2024 WL 3170398, at *11 (E.D. Tex. June 25, 2024).

Here, none of the five inventors and none of the four identified prior artists are located in this District. In contrast, four of the five inventors and all four prior artists are located in California

and subject to NDCA's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(B). Further, all five inventors and the four prior artists were subpoenaed and deposed in *Sandisk I*, and prosecution counsel for the '400 and '667 patents are also located in California Curran Decl. ¶¶ 3-11; *supra* Section II.D.

#### 4. The "Other Practical Problems" Factor Favors Transfer

Courts also look at "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. As discussed above, judicial economy favors transfer because the NDCA court already adjudicated a similar case between these same parties on the same technology and same and similar patents. Furthermore, the "last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021) (citation omitted). As discussed above, the vast majority of anticipated witnesses and evidence are in NDCA and California, and none are in WDTX.

## V. CONCLUSION

For the foregoing reasons, Viasat requests that the Court transfer the claims against Viasat to the Northern District of California.

Dated: May 8, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ John Bash*

Patrick D. Curran (MA State Bar No. 568701)
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone: (617) 712-7100
Facsimile: (617) 712-7200
patrickcurran@quinnemanuel.com

John Bash (TX State Bar No. 24067504)
Evan Pearson (TX State Bar No. 24121403)
300 West 6th St, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com
evanpearson@quinnemanuel.com

*Attorneys for Defendant Viasat, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned hereby certifies that, on May 8, 2026, all counsel of record who have appeared in this case were served with a copy of the foregoing document via email.

By: *\/s/ John Bash*
John Bash

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(g), I certify that the parties met and conferred on March 23, 2026 and that the parties are at an impasse, leaving an open issue for the Court to resolve. Plaintiffs indicate that they oppose this motion.

By: */s/ John Bash*
John Bash