**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS,**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| SANDISK TECHNOLOGIES, INC. AND SANDISK STORAGE MALAYSIA SDN. BHD. | § | |
| | § | |
| | § | |
| Plaintiff | § | Civil Action No.: 7:26-cv-00019-DC-DTG |
| | § | |
| v. | | Jury Trial Demanded |
| VIASAT, INC., and GIGCASTERS, LLC | | |
| Defendant | | |

**DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS FOR CLAIM AND ISSUE PRECLUSION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .... 1

II. ARGUMENT .... 2

A. VIASAT'S MOTION WAS PROPERLY BROUGHT UNDER RULE 12(B)(6) .... 2

B. ANY DIFFERENCES BETWEEN IPTV AND THE PREVIOUSLY ACCUSED PRODUCTS DO NOT DEFEAT PRECLUSION .... 4

1. Sandisk's Argument That IPTV Was Not Previously Adjudicated Ignores the Shared Accused Functionality .... 4

2. The Alleged Differences between IPTV and IFE are Irrelevant .... 5

3. Judicial Estoppel Does Not Apply .... 7

C. THE '330 AND '854 PATENTS ARE MATERIALLY THE SAME AS THOSE ALREADY ASSERTED .... 8

D. NDCA COURT'S SUMMARY JUDGMENT ORDER IS FINAL FOR PURPOSES OF PRECLUSION .... 9

III. CONCLUSION .... 10

CERTIFICATE OF SERVICE .... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acumed LLC v. Stryker Corp.*,
525 F.3d 1319 (Fed. Cir. 2008) ....................5

*Adaptix, Inc. v. AT&T Mobility LLC*,
No. 6:12-CV-17, 2015 WL 12696204 (E.D. Tex. May 12, 2015) ....................10

*Am. C.R. Union v. Martinez-Rivera*,
No. 2:14-CV-026-AM-CW, 2015 WL 13650011 (W.D. Tex. Feb. 23, 2015) ....................3

*Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.* ,
748 F.3d 631 (5th Cir. 2014) ....................3

*Comer v. Murphy Oil USA, Inc.*,
718 F.3d 460 (5th Cir. 2013) ....................2

*Egenera, Inc. v. Cisco Sys., Inc.*,
972 F.3d 1367 (Fed. Cir. 2020) ....................8

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ....................3

*Golden v. United States*,
2025 WL 900873 (Fed. Cir. Mar. 24, 2025) ....................2

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
147 F. Supp. 2d 464 (W.D. Va. 2001) ....................10

*Lawlor v. Nat'l Screen Corp.*,
349 U.S. 322 (1955) ....................2

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ....................2

*Medliant Inc. v. Mabute*,
No. 1:23-CV-419, 2024 WL 1913123 (E.D. Tex. May 1, 2024) ....................2

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
884 F.3d 1350 (Fed. Cir. 2018) ....................8, 10

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ....................8, 9

*Pfaff v. Wells Elec., Inc.*,
5 F.3d 514 (Fed. Cir. 1993) ....................9

*Phil-Insul Corp. v. Airlite Plastics Co.*,
854 F.3d 1344 (Fed. Cir. 2017) ....................10

*Senju Pharm. Co., Ltd. v. Apotex Inc.*,
746 F.3d 1344 (Fed. Cir. 2014) ....................2, 5

*United States v. Huntsberry*,
956 F.3d 270 (5th Cir. 2020) ....................3

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*,
112 F.4th 1364 (Fed. Cir. 2024) ....................4

*Zamorano v. Zyna LLC*,
SA-20-CV-00151-XR, 2020 WL 2316061 (W.D. Tex. May 11, 2020) ....................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................2, 3

Fed. R. Evid. 201(c)–(d)....................3

# I. INTRODUCTION

Sandisk already asserted the ***same*** ’400 and ’667 Patents against Viasat and lost. After full claim construction and summary-judgment briefing in the Northern District of California, the court held that Viasat’s accused architecture—the S4 server, M3 modem, and VCDS delivery mechanism—does not infringe the “authenticate” limitation of the ’400 Patent or the “secure region” limitation of the ’667 Patent. Unwilling to accept that result, Sandisk filed this new case accusing Viasat’s IPTV in place of IFE. But preclusion does not turn on product names; it turns on the issues actually litigated. The components Sandisk accuses here—the same S4 server, same M3 modem, and same VCDS delivery mechanism—are identical to those found non-infringing in NDCA. Whether that architecture happens to deliver preloaded movies (IFE) or live television (IPTV) is beside the point. A single delivery infrastructure can carry different content the same way a conveyor belt can carry different cargo; but changing cargo does not defeat preclusion.

Sandisk highlights trivial differences between IPTV and IFE to attempt to distinguish its loss in *Sandisk I*. None of these purported differences—not the “continuously updated” S4 server, [redacted], nor [redacted]—were central to the NDCA court’s non-infringement analysis; rather, it found the VCDS architecture, which underlies both IPTV and IFE, non-infringing. And the fact that Sandisk asserts two new patents here does not avoid preclusion. Not only do those patents share the same specification with the ’667 Patent, but the FAC also admits they describe the same invention as the ’667 Patent.

Lastly, Sandisk relies on out-of-circuit case law to challenge the finality of the *Sandisk I* claim construction decisions. In Texas, however, courts regularly hold that claim construction decisions essential to the non-infringement decision have preclusive effect in a second case, and a litigant cannot evade preclusion by racing to file a duplicative suit before an appeal concludes. The Court should grant Viasat’s motion to dismiss.

## II. ARGUMENT

### A. VIASAT'S MOTION WAS PROPERLY BROUGHT UNDER RULE 12(B)(6)

Sandisk feigns confusion over the basis for Viasat's renewed motion to dismiss. Opp. at 5-6. But Sandisk knew before filing its opposition that the motion was "brought under Rule 12(b)(6), just as it was in *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) and *Medliant Inc. v. Mabute*, No. 1:23-CV-419, 2024 WL 1913123 (E.D. Tex. May 1, 2024), among others, as cited in the motion." Ex. 1 (May 22 & 27, 2026 Emails between C. Rayburn and A. Lai).[1] There is no confusion over the applicable rule.

Sandisk also accuses Viasat of not "adhering to the pleadings" by attaching exhibits from *Sandisk I* without separately seeking judicial notice. Opp. at 5–6. But a court may consider any exhibits attached to a complaint or that are otherwise "central to the claim and referenced by the complaint" without taking judicial notice. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Sandisk itself placed Viasat's exhibits—all docket entries from *Sandisk I*—squarely at issue by mentioning the *Sandisk I* case over ***80 times*** in its FAC, including referencing the *Sandisk I* claim construction briefing and order (Viasat's Exhs. 4, 5, 9, 10, 11, 12), complaint (Viasat's Exh. 3), summary judgment order (Viasat's Exh. 6), and Sandisk's own summary judgment positions on infringement (Viasat's Exhs. 7, 8). *See, e.g.*, FAC ¶¶ 51, 52, 54. Even more importantly, the FAC ***expressly cites*** the same documents Viasat exhibited, including *Sandisk I*'s D.I. 188 (Viasat's Exh. 1) and D.I. 215 (Viasat's Exh. 2). *See* FAC ¶ 52. Viasat's exhibits are properly part of the motion to dismiss record because Sandisk's FAC incorporates and

[1] These were examples; Viasat's opening brief repeatedly cites Rule 12(b)(6) decisions as the basis for the motion. *See, e.g.*, *Senju*, 746 F.3d at 1347–48; *Medliant*, 2024 WL 1913123, at *6; *Lawlor v. Nat'l Screen Corp.*, 349 U.S. 322 (1955); *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460 (5th Cir. 2013); *Golden v. United States*, 2025 WL 900873 (Fed. Cir. Mar. 24, 2025).

relies on them. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (explaining that courts can examine "documents incorporated into the complaint by reference" on Rule 12(b)(6) motions).

Even if Viasat's exhibits fall outside the pleadings (they do not), this Court may take judicial notice of them. Fed. R. Evid. 201(c)–(d) ("The court may take judicial notice on its own . . . at any stage of the proceeding"); *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650011, at *5 n.8 (W.D. Tex. Feb. 23, 2015). Each of Viasat's exhibits consist of documents publicly filed on the NDCA docket and matters of public record—precisely documents for which judicial notice is appropriate and commonplace. *Funk*, 631 F.3d at 783 (holding judicial notice is proper for "publicly-available documents and transcripts"). Sandisk does not claim "the facts within them were subject to reasonable dispute." *See* Opp. at 6. Nor could it; "[i]t is well-settled that courts may judicially notice court records as evidence of judicial actions." *United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020).

Sandisk's request that the Court "convert this motion to one for summary judgment" and permit Sandisk to "obtain all relevant discovery" is baseless. Opp. at 6. The Fifth Circuit is clear: a district court's application of judicial notice does "not transform the motion to dismiss into a motion for summary judgment." *Funk*, 631 F.3d at 780; *see also Zamorano v. Zyna LLC*, SA-20-CV-00151-XR, 2020 WL 2316061, at *5 (W.D. Tex. May 11, 2020) (rejecting argument that a motion to dismiss attaching a public document should be converted into a motion for summary judgment, and denying additional discovery). Viasat's arguments are cognizable on a motion to dismiss, and the motion should be granted.[2]

[2] Sandisk's citation to *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.* is inapposite; there, the Fifth Circuit found that the district court erred in considering exhibits that the ***plaintiff*** attached to its opposition to the motion to dismiss, which "factually augment[ed] the complaint timeline." 748 F.3d 631, 635 (5th Cir. 2014).

### B. ANY DIFFERENCES BETWEEN IPTV AND THE PREVIOUSLY ACCUSED PRODUCTS DO NOT DEFEAT PRECLUSION

Issue preclusion, claim preclusion, and the *Kessler* doctrine do not attach to product names—but to the actual issues previously litigated. *Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1379 (Fed. Cir. 2024) ("Issue preclusion may apply and bar a second litigation, even where the products are different from the first litigation . . . [where] a close identity exists between the relevant features of the accused device and the device previously determined to be non-infringing such that they are essentially the same.") (internal quotations omitted). Here, the components that Sandisk accuses in WDTX—the S4 server, M3 modem, and VCDS delivery mechanism—are ***identical*** to those held non-infringing in NDCA. The NDCA court determined these very components did not infringe the "authenticate" limitation of the '400 Patent or the "secure region" limitation of the '667 Patent. Those determinations bind Sandisk regardless of product name or type of media content passing through the non-infringing architecture.

#### 1. Sandisk's Argument That IPTV Was Not Previously Adjudicated Ignores the Shared Accused Functionality

Sandisk's argument that "the NDCA court affirmatively excluded any evidence regarding the IPTV Product from the NDCA case" conflates the product label with the accused functionalities. Opp. at 9. The NDCA court excluded IPTV not because IPTV uses entirely different components than VCDS, but because Sandisk's infringement contentions failed to accuse IPTV ***as a separate product***. Magistrate Judge Kang found that Sandisk's contentions "accus[ed] the VCDS (and not the IPTV product) of receiving the IPTV content." D.I. 36-3 at 9. Judge Gilliam likewise confirmed that Sandisk "identif[ied] IPTV as a type of content that can be accessed via the Accused Products"—i.e., via VCDS—but did "not identify IPTV itself as an Accused Product." D.I. 36-7 (SJ Order) at 18. Still, the NDCA court clearly determined that the components underlying the IFE product Sandisk adequately accused—"VCDS running on the M3 modem in

conjunction with the S4 server"—do not infringe regardless of whether they are transmitting preloaded movies or live TV content. *Id.* at 19, 28, 31. These same components underly the IPTV product in this case. Sandisk cannot genuinely argue that "[t]he question of whether the IPTV Product infringes the asserted patents remains entirely open." Opp. at 10.

**2. The Alleged Differences between IPTV and IFE are Irrelevant**

Sandisk identifies two supposed "material[] differen[ces]" between IPTV and IFE: a [redacted] that communicates with the [redacted], and a "continuously updated" S4 server. Opp. at 10–13. Neither of these components defeat preclusion. Preclusion extends to products that are "***essentially*** the same," "where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (emphasis added) (internal quotations omitted); *see also Senju*, 746 F.3d at 1349–50. Sandisk's own FAC clearly accuses the same VCDS, S4 server, and M3 modem of practicing the same limitations the NDCA court found not infringed. *See* FAC ¶¶ 75–76, 127–130, 150, 153. Even in the light most favorable to Sandisk, its allegations on the [redacted], [redacted], and the "continuously updated" S4 server are irrelevant to the limitations at issue and do not defeat preclusion.

First, Sandisk argues that IPTV practices the '400 Patent's "authenticate" limitation through a "materially different mechanism"—a [redacted] authentication workflow involving the [redacted], rather than the "token theory" rejected in NDCA. Opp. at 12–13. But this is a distinction without a difference. Sandisk's theory in NDCA invoked the ***same*** [redacted] authentication workflow. There, Sandisk's expert Dr. Easttom argued that in both IFE and IPTV, "device authentication with the DRM server is via a signed token that is unique to the device" and "the Viasat S4 server and M3 modem (kiosk) obtain unique device identifiers from the passenger

electronic devices ('PEDs')" which are used "to authenticate the PED with a DRM server, [redacted], or the VCDS ***ground servers***." D.I. 36-8 (*Sandisk I*, Sandisk's SJ Opp. Br.) at 19, 21-22 (emphasis added) ("The [redacted] contains the [redacted] for IPTV, which provides the authentication/authorization."). The CAS workflow was thus squarely presented in NDCA. The NDCA court rejected the argument because Sandisk "does not explain how the token provides more than 'identification' rather than finding the device is 'trusted.'" SJ Order at 31. In WDTX, Sandisk asserts the same infringement theory: the kiosk authenticates the PEDs "by communicating with a remote trusted server in the [redacted] through a [redacted].'" FAC ¶¶ 153, 156 (emphasis added). Sandisk now focuses on the [redacted]—rather than VCDS ground servers—as the "remote trusted server." But the NDCA court rejected this theory not because of the identity of the ground server, but because Sandisk failed to show that the [redacted] workflow confirmed that a device is "trusted." Substituting "[redacted]" for "VCDS ground servers" cannot cure that failure. SJ Order at 31. The issue the NDCA court resolved—whether a [redacted] token-based workflow satisfies the "authenticate" limitation—is identical here.

Second, Sandisk argues that the IPTV product practices the '667 Patent's "secure region" limitation by "continuous[ly] caching and buffering [] live content on the S4 server." Opp. at 2, 11–12. Sandisk advanced the same infringement theory in NDCA. There, Sandisk asserted that the "[redacted] (which includes onboard storage)"—the S4 server—was the claimed NAS device and that "a secure portion of that storage—[redacted]—constituted '[redacted].'" D.I. 36-8 (*Sandisk I*, Sandisk's SJ Opp. Br.) at 5–6 (emphasis added); *see also* D.I. 36-9 (Easttom Rep.) ¶ 553. The NDCA court rejected the theory, holding that "[i]dentifying the [redacted]

[redacted]" and that "Sandisk's infringement contentions are silent as to how the processor receives an indication of the [redacted]." SJ Order at 27–28. Sandisk alleges the same theory here: "the digital IPTV content is transmitted to a storage associated with the S4 server (a 'network attached storage (NAS)')," "live TV content is cached/stored on the storage associated with the S4 server," and "the system of the Accused Product encrypts external storage devices including the storage associated with the S4 server such that the NAS has a secure region." FAC ¶¶ 127–128. This is the same accused component (S4 server), same alleged characteristic (encryption creating a "secure region"), and same infringement theory (the cache constitutes a buffering secure region). That Sandisk now claims the S4 server is "continuously updated," Opp. at 11–12, is immaterial; the NDCA court's rejection of the "[redacted]" theory had nothing to do with whether the cache was updated in real time or pre-loaded. SJ Order at 27–28.

### 3. Judicial Estoppel Does Not Apply

In NDCA, Viasat told the court that IFE and IPTV are "stand alone products" sold to different customers. D.I. 36-3 at 6. That is true. They deliver different types of content (on-demand movies vs. live TV) through separate product offerings, and have different *customers* paying different *prices* to generate different Viasat *revenues*.[3] But Viasat never argued that the IPTV and IFE products use different underlying architecture or that common proof could not establish infringement for both products; as here, it said the opposite. *See, e.g.*, D.I. 36-2 at 6 ("IPTV is a content stream delivered by VCDS."). A single delivery infrastructure (VCDS) can deliver multiple different things. Viasat's IFE and IPTV products carry different content via the same mechanism, just as one conveyor belt can carry boxes made of cardboard or steel. Viasat's position

[3] For example, some airlines only purchase IFE from Viasat, while others purchase both IFE and IPTV. *See* D.I. 36-2 (Joint Discovery Letter Brief) at 4.

in NDCA is *identical* to its position here. *See Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1379 (Fed. Cir. 2020) (requiring that positions be both "mutually exclusive" and "directly inconsistent" to warrant judicial estoppel). Sandisk's argument fails at the first element, foreclosing the application of judicial estoppel.

Moreover, it would be Sandisk, not Viasat, that would get an "unfair advantage," Opp. at 16, if Viasat was precluded from asserting the truth: that IFE and IPTV utilize the same delivery architecture. Sandisk chose to predicate its infringement theories here on that shared architecture already held noninfringing in NDCA. Ignoring that reality would allow Sandisk a second bite at the apple and reward it for failing to comply with the NDCA patent local rules requiring clear identification of accused products. Preclusion principles exist to protect Viasat from the serial harassment of duplicative lawsuits like this one. *See* Mot. at 2, 6, 19–20.

### C. THE '330 AND '854 PATENTS ARE MATERIALLY THE SAME AS THOSE ALREADY ASSERTED

Sandisk claims that the '330 and '854 Patents are so different from the '667 Patent that the asserted claims should be exempt from all preclusion principles. *See* Opp. at 17–19. But the Federal Circuit does not require claims be word-for-word identical for preclusion to apply; rather, preclusion regularly extends to a "related variation" of a limitation, even those using "different language," so long as it "describe[s] substantially the same invention." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351-52 (Fed. Cir. 2018). The three patents describe "substantially the same invention," share a common specification, and claim the same "secure region." Indeed, Sandisk's FAC openly admits that all three patents concern the ***same invention***: "The '854 Patent, '330 Patent, ***and*** '667 Patent provide technical solutions by introducing, *inter alia*, a secure buffer implemented on a network-attached storage ('NAS') device located within the user's local network . . ." FAC ¶¶ 39–

40, 42–43. The three patents also share the ***same*** specification language on "secure region" that the NDCA court relied on. *See* D.I. 36-5 (CC Order) at 19. On those facts, preclusion applies.

Sandisk's selective reading of "secure region" in the '330 Patent does not defeat preclusion. Opp. at 18. The full limitation discloses receiving "an indication of the NAS device comprising a buffer for streaming media via the LAN, to a separate display device on the LAN, wherein the buffer ***comprises a secure region*** and a user accessible region." '330 Patent at 11:9–14 (emphasis added). Nor does Sandisk's distinction between the '854 Patent's "finding a storage device . . . with an available ***secure region*** . . ." and the '667 Patent's "receiving an indication of a [Network Attached Storage] device having a secure region . . ." defeat preclusion. Opp. at 19. Sandisk provides no explanation of how the "secure region" of both patents differ or why the NDCA court's construction of "secure region" in the '667 Patent would not equally apply to the identical term in the '854 Patent. Opp. at 19. Sandisk also ignores the claims and figures describing the "secure region" consistently between the '330 and '854 Patents. *See, e.g.*, '330 Patent at Fig. 1 ("FIG. 1 is a diagram illustrating aspects of an example Network Attached Storage device having a secure region."), cls. 1, 6, 12, 16, 20 (all claiming a "secure region"); '854 Patent at Fig. 1 (same), cls. 1, 10, 18 (same). The minor differences in wording between the three patents—all directed to a "secure region"—are precisely the type of "slightly different language" that the Federal Circuit found to invite the application of preclusion. *See Ohio Willow Wood*, 735 F.3d at 1342.

### D. NDCA COURT'S SUMMARY JUDGMENT ORDER IS FINAL FOR PURPOSES OF PRECLUSION

Sandisk's argument that the NDCA court's claim constructions are not "final" is incorrect. Opp. at 20. A claim construction order has preclusive effect if—as here—"the determination was essential to the judgment there on the issue of infringement." *Pfaff v. Wells Elec., Inc.*, 5 F.3d 514, 518 (Fed. Cir. 1993). The NDCA court's constructions of "authenticate" and "secure region" were

undisputedly essential to its non-infringement finding. Mot. at 10-11, 13; *see also Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357-58 (Fed. Cir. 2017) (holding that claim construction analysis is a necessary component of a summary judgment decision of non-infringement). And Texas courts regularly hold that claim construction decisions that were essential to the non-infringement decision have preclusive effect in a second case. *See Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-17, 2015 WL 12696204, at *9, 18, 21 (E.D. Tex. May 12, 2015) (holding that preclusion barred infringement claims even while that summary judgment decision was pending appeal). Sandisk cites non-binding out-of-district cases involving claim construction decisions that were not "essential" to any non-infringement decision. For example, in *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, the court declined to apply preclusion because the "*Markman* ruling was not essential to a determination of patent infringement" in the prior action—the opposite of the case here. 147 F. Supp. 2d 464, 467–70 (W.D. Va. 2001). Lastly, Sandisk relies upon *Phil-Insul* and *Nestle*; although those cases had proceeded through appeal by the time preclusion was adjudicated, nowhere did the court require that a district court's claim construction decision ***must*** proceed through appeal as a prerequisite to being final for preclusion. *Phil-Insul*, 854 F.3d at 1357–58; *Nestle*, 884 F.3d at 1352. Sandisk's argument simply is not the law—were it otherwise, any party could serially re-litigate even an identical case in a different forum, thereby hoisting years of expensive and unnecessary litigation on its adversary, simply by filing an appeal.[4]

## III. CONCLUSION

Viasat respectfully requests that the Court grant its motion to dismiss.

[4] If the Court is inclined to await the Federal Circuit's decision on appeal in *Sandisk I*, the WDTX and NDCA cases can be consolidated by transferring this action to NDCA. If the Federal Circuit remands in *Sandisk I*—sending claim construction back to NDCA—then Judge Gilliam would be in the position to construe the same claim limitations, avoiding inconsistencies between courts.

Dated: June 12, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Patrick D. Curran*

Patrick D. Curran (MA State Bar No. 568701)
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone: (617) 712-7100
Facsimile: (617) 712-7200
patrickcurran@quinnemanuel.com

John Bash (TX State Bar No. 24067504)
Evan Pearson (TX State Bar No. 24121403)
300 West 6th St, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com
evanpearson@quinnemanuel.com

*Attorneys for Defendant Viasat, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned hereby certifies that, on June 12, 2026, all counsel of record who have appeared in this case were served with a copy of the foregoing document via email.

Date: June 12, 2026

*_/s/ Patrick D. Curran_*
Patrick D. Curran